1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7    LAWRENCE DARREN MOLDER,

8                            Plaintiff,          NO:  2:18-CV-0257-TOR

9          v.                                    ORDER GRANTING DEFENDANT
                                                 BNSF RAILWAY COMPANY'S
10   BNSF RAILWAY COMPANY, a                     MOTION FOR SUMMARY
     Delaware corporation,                       JUDGMENT
11                           Defendant.

12

13         BEFORE THE COURT is Defendant BNSF Railway Company's Motion for

14   Summary Judgment (ECF No. 32).  The Motion was submitted without a request

15   for oral argument.  The Court has reviewed the files and the record, and is fully

16   informed.  For the reasons discussed below, the Motion for Summary Judgment

17   (ECF No. 32) is **granted**.

18                         **STANDARD OF REVIEW**

19         A movant is entitled to summary judgment if the movant demonstrates

20   "there is no genuine dispute as to any material fact and that the movant is entitled

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION
FOR SUMMARY JUDGMENT ~ 1

to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id.*  The moving party bears the "burden of establishing the nonexistence of a 'genuine issue.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  *Id.*

In deciding, the court may only consider admissible evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  As such, the nonmoving party may not defeat a properly supported motion with mere allegations or denials in the pleadings.  *Liberty Lobby*, 477 U.S. at 248.  At this stage, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor."  *Id.* at 255.  However, the "mere existence of a scintilla of evidence" will not defeat summary judgment.  *Id*. at 252.

Per Rule 56(c), the parties must support assertions by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  The court is not

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT ~ 2

obligated "to scour the record in search of a genuine issue of triable fact[;]" rather, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (brackets in original) (quoting *Richards v. Combined Ins. Co.,* 55 F.3d 247, 251 (7th Cir. 1995)). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## FACTS[1]

This case arises out of Plaintiff Lawrence Darren Molder's employment with Defendant BNSF. In short, Plaintiff asserts (1) BNSF terminated him out of retaliation for Plaintiff reporting injuries in 2009 and 2017, in violation of the Federal Railroad Safety Act ("FRSA"), and (2) BNSF is liable under the Federal Employer Liability Act ("FELA") for negligently causing the 2017 injury. ECF No. 1 at 5-7, ¶¶ 19-29,

//

//

---

[1] The following are the undisputed material facts unless otherwise noted. All genuine disputes have been resolved in favor of Plaintiff as the non-moving party.

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT ~ 3

1

    1.  **Plaintiff begins employment; 2009 injury, suit, and settlement**

2

    Plaintiff began his employment with BNSF in 2003 as a laborer on a "tie

3

gang."  ECF No. 32 at 2.  Sometime in 2009, Plaintiff suffered a work-related

4

injury involving a rail puller and filed a FELA lawsuit three years later in October

5

2012.  ECF Nos. 1 at 2-3, ¶¶ 7-8; 32 at 2.  After more than four years of litigation,

6

BNSF Claims Representative Josh Gore agreed to a settlement amount with

7

Plaintiff's counsel on January 13, 2017.  ECF No. 32-9 at 2, ¶ 5.  Thereafter, Gore

8

sent the proposed settlement to Plaintiff's counsel.  ECF No. 32-9 at 2, ¶ 6.

9

Plaintiff, through counsel, sent BNSF a signed release on March 17, 2017.  ECF

10

No. 32-9 at 2, ¶ 6; 76 at 2, ¶ 3.

11

    2.  **BNSF discovers workplace violations**

12

    Meanwhile, Plaintiff continued to work at BNSF throughout litigation.  By

13

2016, Plaintiff worked as a Foreman on a three-person "surfacing crew."  ECF No.

14

32 at 3.  On November 21, 2016, Hal Lewandoski,[2] BNSF Manager of Roadway

15

Planning, was inspecting the Columbia River subdivision when he saw Plaintiff's

16

crew equipment was not being used.  ECF No. 32-8 at 50.  Lewandoski asked a

17

nearby track inspector where Plaintiff's crew was, but the inspector said he did not

18

know.  ECF No. 32-8 at 50.  Lewandoski then "went up to where there was

19

20

    [2]    Plaintiff's manager was on vacation.  ECF No. 77 at 2, ¶ 5.

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION
FOR SUMMARY JUDGMENT ~ 4

supposed to be work being performed [and] asked the foreman [of a different crew] for the section [] where the surfacing crew was." ECF No. 32-8 at 50-51. According to Lewandoski, "[t]hey kind of laughed it off, and [told Lewandoski that Plaintiff's crew] looked at it and said they didn't think they could repair it and they had other things to do." ECF No. 32-8 at 50. Lewandoski "made the comment about [there] being a lot of track and time" – meaning work could be performed at that time – and "they just laughed and said, well, this is pretty normal. They disappear around noon every day."[3] ECF No. 32-8 at 50. Lewandoski tried to contact Plaintiff, but he could not reach him. ECF No. 32-8 at 53.

Lewandoski talked with his boss at the time, David Thornton, and they "decided to look at the GPS log to see how they were spending their day." ECF No. 32-8 at 50-51. The GPS information for the surfacing crew truck did not "match[] up" with Plaintiff's reported time for work—"the vehicle was off territory

---

[3]    Plaintiff argues the third-party's statement is hearsay. ECF No. 43 at 17. However, it is relevant to Lewandoski and BNSF's state of mind (i.e. believing there was an issue with Plaintiff leaving his work site), and is not used to support the truth of the matter asserted (the GPS logs provide the basis for Plaintiff's whereabouts).

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT ~ 5

prior to end of shift.  And the times paid did not match the vehicle's location."

ECF No. 32-8 at 52.  For example, for November 21, 2016, Plaintiff reported that

he worked a full eight hours surfacing track, plus 30 minutes of unauthorized

overtime.[4]  However, the GPS information showed Plaintiff's work truck was at

his home by 2:11 p.m.—before his shift ended (3:00 p.m.).  ECF No. 32-1 at 5, ¶

20; *see* ECF No. 43 at 20, ¶ 20 (Plaintiff not disputing the proposed fact).  Plaintiff

argues that he was getting fuel, ECF No. 43 at 3, but his fuel card transactions

demonstrate otherwise, ECF No. 71 at 7, and this still does not explain why his

---

[4]      Plaintiff asserts that he thought he was entitled to charge for time spent

making nightly reports, despite the fact that Rule 61 clearly, in simple terms, states

otherwise.  ECF No. 32-11 at 66 ("Foremen . . . having crews of more than five (5)

men working under their jurisdiction . . . who are required to keep time, make

material and other reports outside of the assigned working hours of the general

force, will be allowed four (4) hours in such month . . . as compensation therefor.

This allowance will not be made where timekeepers or assistant foreman are

employed, or where foreman have crews of less than six (6) men." ).  In any event,

BNSF found Plaintiff violated *multiple* work-place rules and Plaintiff's contention

about what work is compensable does not explain why his vehicle was at his home

before the end of his shift.

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION
FOR SUMMARY JUDGMENT ~ 6

vehicle was at his home *before* his shift ended.  A review of additional reported time demonstrated that Plaintiff "had repeatedly left work before the end of his scheduled shift and claimed paid time (including overtime) while at home or at a hotel."  ECF No. 43 at 20, ¶ 22.

Lewandoski thought "it looked like [Plaintiff] was paying himself excessively outside of what the GPS logs for the truck state."  ECF No. 32-8 at 55. Lewandowski turned over the information "to the managers who were subsequently involved in the investigation and disciplinary decision[;]" Lewandoski was no longer involved.  ECF No. 77 at 2-3, ¶ 5.

3. **BNSF investigation**

BNSF has a disciplinary policy known as "PEPA" (Policy for Employee Performance Accountability), which lists three levels of discipline: Standard, Serious, and Stand-Alone Dismissible.  ECF No. 43 at 23, ¶ 30.  "Stand-Alone Dismissible" conduct includes "Theft or any other fraudulent act that may be evidenced by . . . taking of BNSF monies or property not due" and "Dishonesty about any job-related subject[.]"  ECF No. 43 at 23, ¶ 31.  When an employee is subject to termination, BNSF holds an investigation hearing.  ECF No. 32-3 at 2, ¶ 5.  After BNSF holds an investigation hearing, a member of the "PEPA Team" makes a recommendation after reviewing the transcript of the investigation and the hearing exhibits.  ECF No. 32-3 at 2, ¶ 5.

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT ~ 7

1    BNSF initiated an investigation and sent Plaintiff a notice (dated December

2    9, 2016) to attend an investigation hearing; the notices state: "An investigation has

3    been scheduled . . . for the purpose of ascertaining the facts and determining your

4    responsibility, if any, in connection with your alleged violations that occurred on

5    or about August 15 to November 21, 2016 . . . .  Alleged violations include, but are

6    not limited to, leaving your assignment and paying yourself for being on

7    assignment without proper authority and dishonesty for paying yourself for time

8    you were not working."  ECF No. 32-5 at 2.  After several mutually agreed

9    postponements, ECF No. 32-5 at 3-8, an investigation hearing was held on

10   February 15, 2017, to determine if a violation occurred; Plaintiff was provided

11   with a union representative at the hearing.  ECF No. 43 at 21, ¶ 24.

12    PEPA Team member Brian Clunn was assigned to Plaintiff's case and

13   conducted a review of the investigation materials.  Clunn determined that the

14   charges were proven, and recommended Plaintiff be terminated because Plaintiff

15   "committed stand-alone dismissible rule violation", including "13 separate

16   occasions between August 15, 206 and November 21, 2016 [where Plaintiff]

17   falsely claimed overtime[.]"  ECF No. 43 at 25-26, ¶ 33; ECF No. 32-5 at 2.

18   General Director Line Maintenance David Thornton accepted Clunn's

19   recommendation, ECF No. 43 at 26, ¶ 34, and Plaintiff was terminated on March

20   14, 2017, ECF No. 1 at 3, ¶ 12.

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION
FOR SUMMARY JUDGMENT ~ 8

1

2

3   4.   **February 2017 Injury**

4   On February 27, 2017, before Plaintiff was terminated, but after BNSF held

5   the investigation hearing, Plaintiff began working on a "mini tie gang" as a Spiker

6   Machine Operator.  ECF No. 43 at 29, ¶ 39.  On Plaintiff's first day on the job, the

7   crew was assigned to remove concrete railroad ties.  ECF No. 43 at 29, ¶ 40.

8   "Because a Spiker does not operate on concrete ties, [Plaintiff] worked on the

9   ground as a laborer, which he and all machine operators are qualified and expected

10  to do when not operating their machines."  ECF No. 43 at 29-30, ¶ 41.

11  "Foreman Doug Martin tasked [Plaintiff and ten plus] other laborers

12  assigned to use a hand tool called a de-clipper, or 'Harley,' designed to remove rail

13  clips from concrete railroad ties."  ECF No. 43 at 30, ¶ 42.  Harleys are designed

14  solely for removing rail clips—they are not used for any other task.  ECF No. 73 at

15  68, ¶ 45.  The tool is designed for use by one person, but employees occasionally

16  work together on one Harley.  ECF No. 73 at 68, ¶ 46.  Although at least one

17  hydraulic machine was available for the project, Martin "chose to use it to re-

18  install clips, instead of de-clip" because it was faster to use the Harleys in lieu of

19  the machine(s).  ECF No. 43 at 30, ¶ 43 (Plaintiff disputing number of hydraulic

20

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION
FOR SUMMARY JUDGMENT ~ 9

1    machines available).  According to Plaintiff, he told Martin: "we have machines to

2    do this[,]" but did not say using the Harleys was dangerous.  ECF No. 73 at 66-67.

3         Plaintiff inspected his Harley for defects before and during use and found

4    there was nothing wrong with the tool.  ECF No. 73 at 69, ¶ 47.  From the first

5    clip, Plaintiff felt soreness in his back just picking up the tool and struggled with

6    the Harley, testifying that he "didn't like what [he] was doing from the first clip[,]"

7    he "was tired and winded", and that he "didn't belong there."  ECF No. 73 at 71-

8    72, ¶¶ 52-54.  Plaintiff did not ask co-workers for help.  ECF No. 73 at 70-71.

9         Plaintiff began falling behind the rest of the crew when an Assistant

10   Foreman stated: "Come on, Molder.  Hurry up."  ECF No. 73 at 71, ¶ 51, at 73, ¶

11   56.  As Plaintiff recalled: "I was having difficulty with the rocks.  And I was taking

12   the time to bend over, get down on a knee" to remove the rocks when the assistant

13   foreman told him to hurry up.  ECF No. 43-15 at 128.  Plaintiff replied: "These

14   rocks are in my way, and this is too much.  I can't get them."  ECF No. 43-15 at

15   128.  The assistant foreman then grabbed the Harley from Plaintiff, stating: "This

16   is how you do it.  You grab it.  You squeeze it.  You push it forward, and you yank

17   it back."  ECF No. 43-15 at 128.  Plaintiff asserts that he was "ordered" to stop

18   removing the rocks between the clips based on this exchange.  ECF No. 73 at 75.

19        Plaintiff continued to work to remove the clips with the Harley.  ECF No.

20   43-15 at 129.  Although Plaintiff tried to keep up as best as he could, (1) he did not

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION
FOR SUMMARY JUDGMENT ~ 10

1  change the way he was using the Harley, (2) he continued to use the tool in the

2  proper manner with proper body mechanics, (3) he continued to inspect his work

3  environment, and (4) he took sufficient time to perform his job tasks safely.  ECF

4  No. 43-15 at 91, 99-100, 128-29.  The only difference is that Plaintiff "increase[d]

5  the speed with which he was removing clips by leaving whatever rocks were

6  between them and the ties."  ECF No. 73 at 81.

7          Plaintiff testified that he removed several hundred clips that day before he

8  was injured.  ECF No. 43-15 at 83.  While he was sore from the beginning,

9  Plaintiff alleges he was removing a clip when he was stricken with "numbing pain"

10 in his back that shot all the way down his leg, "felt something letting go[,]" and

11 "suddenly got sick to [his] stomach[.]"  ECF No. 43-15 at 88.  Plaintiff did not lose

12 his footing and did not recall whether or not there were rocks in the final clip.  ECF

13 No. 73 at 78-79, ¶¶ 63-64.

## DISCUSSION

A.  **<u>Retaliation - The Federal Railroad Safety Act (FRSA)</u>**

16         "A claim for unlawful retaliation under the FRSA has two stages: the prima

17 facie stage, *see* 49 U.S.C. § 42121(b)(2)(B)(i)–(ii); 29 C.F.R. § 1982.104(e), and

18 the substantive stage, *see* 49 U.S.C. § 42121(b)(2)(B)(iii)–(iv); 29 C.F.R. §

19 1982.109(a)–(b)."  *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).

20 "At the substantive stage, a violation will be found 'only if the complainant

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION
FOR SUMMARY JUDGMENT ~ 11

1    demonstrates that any [protected activity] *was* a contributing factor in the

2    unfavorable personnel action alleged in the complaint.'" *Id.* at 460 (emphasis and

3    brackets in original) (quoting 49 U.S.C. § 42121(b)(2)(B)(iii)).  "The complainant

4    must prove the substantive case by a preponderance of the evidence." *Id.* (citing

5    29 C.F.R. § 1982.109(a).  Then, "the employer can defeat the retaliation claim 'if

6    the employer demonstrates by clear and convincing evidence that the employer

7    would have taken the same unfavorable personnel action in the absence of [the

8    protected activity].'" *Id.* (brackets in original) (quoting 49 U.S.C. §

9    42121(b)(2)(B)(iv)).

10            Plaintiff asserts that he was terminated because he reported an injury in 2009

11    (and subsequently brought suit based on said injury) and because he reported an

12    injury in 2017.  *See* ECF No. 32 at 11.  Defendant argues there is no evidence of

13    retaliation and that there is clear and convincing evidence it would have terminated

14    Plaintiff irrespective of him reporting his alleged injuries.  The Court agrees with

15    Defendant.

16            As for the 2009 injury, Plaintiff asserts that he was terminated the day after

17    he entered into the settlement agreement for the 2009 injury—attempting to create

18    a temporal connection between this injury and his termination.  However, BNSF

19    did not receive the *signed* agreement until days *after* the termination.  Further, it is

20    undisputed that Gore, the BNSF Claims Representative, did not discuss the

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION
FOR SUMMARY JUDGMENT ~ 12

settlement with anyone in "operations" while settlement discussions were ongoing. ECF No. 32-8 at 47.   Gore specifically testified that he never discussed Plaintiff's 2009 FELA case with David Thornton (General Director Line Maintenance), Lewandoski (Manager of Roadway Planning), or Jeff Stiver (Plaintiff's supervisor).  ECF No. 32-8 at 47.  Additionally, Thornton and Clunn testified that, at the time they made their respective decisions, they did not know Plaintiff litigated his 2009 injury.  ECF No. 32-3 at 4, ¶ 9.  Plaintiff also attempts to raise an issue about why BNSF first investigated his time keeping activities in November of 2016, but the undisputed facts demonstrate BNSF had good reason to begin their investigation.[5]   Plaintiff argues there is other circumstantial evidence of retaliation,

---

[5]      Plaintiff asserts that BNSF did not have a legitimate motive for investigating him because (1) a "supervisor admitted to [Plaintiff] that BNSF was looking for a reason to terminate him"; (2) "it is not at all clear why a crew not being at the jobsite during lunchtime would cause BNSF to suspect a violation"; and (3) BNSF didn't call anyone on the crew before pulling Plaintiff's time records."  ECF No. 43 at 18.  However, the record does not support the first assertion, *see* ECF No. 43-15 at 212-213, 232-233; there was ample basis for concern given another crew informed Lewandoski about Plaintiff's crew leaving early, and Lewandoski did try to contact Plaintiff.

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT ~ 13

but the Court dispels this assertion below.  As such, Plaintiff has failed to provide any evidence to tether the 2009 injury (and the subsequent litigation and settlement) to his termination.

As for the 2017 injury, Plaintiff asserts there is circumstantial evidence of retaliatory intent.  First, Plaintiff argues there is temporal proximity between Plaintiff reporting his injury on February 27, 2017 and his termination on March 14, 2017.  ECF No. 45 at 8-10.  However, it is undisputed that BNSF began its investigation into Plaintiff's time records months before the alleged injury occurred, as BNSF discovered the potential issue on November 21, 2016 and Plaintiff was terminated on March 14, 2017.  It is true that the alleged injury occurred approximately two weeks prior to the ultimate termination, but this shroud of apparent temporal proximity is cleared away by the fact that (1) the underlying investigation was well underway by this point, (2) there is no evidence BNSF changed course after Plaintiff reported the 2017 injury, and (3) the decisionmakers (Thornton and Clunn) were not aware of the injury or the reporting thereof.[6]  *See* ECF Nos. 32-3 at 4, ¶ 9 (Clunn); 32-14 at 2, ¶ 6 (Thornton).

---

[6]      Plaintiff argues that "[i]t is not a huge leap in logic to infer . . . that at least one manager who played a role in Molder's termination was aware of Molder's protected activity."  ECF No. 15-16.  The Court disagrees.  In any event, Plaintiff

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT ~ 14

Importantly, BNSF's allegations against Plaintiff remained consistent and the resulting decision is supported by the evidence in the record.  For the same reasons, Defendants have also provided clear and convincing evidence that they would have terminated irrespective of his reporting the 2017 injury.

Second, Plaintiff argues there are "indications of pretext" by pointing to "BNSF maintaining a compensation structure that incentivizes retaliation"; "BNSF not taking issue with his time reporting until after he engage in protected activity"; and "BNSF investigating only him despite each of his coworkers also have been absent from the jobsite."  ECF No. 45 at 10.  However, the compensation structure is markedly tenuous evidence of pretext, at best; BNSF took issue with the time reporting *before* the alleged 2017 injury[7] and many years *after* the 2009 injury and *after* BNSF found Plaintiff off-site on November 21, 2016; and it was Plaintiff's duty to fill the time cards as a crew for which he was the foreman (Plaintiff must

_____

cannot rely on bald inferences without admissible evidence at this stage of litigation.

[7] Contrary to the facts in the record, Plaintiff asserts that "BNSF took no exception to any such violation until after [Plaintiff] reported his back injury". ECF No. 45 at 10.

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT ~ 15

show similarly situated employees were treated differently—these employees

worked *under* Plaintiff).

Third, Plaintiff states that he "can show [] BNSF inconsistently applied the

applicable rules". ECF No. 45 at 11. Plaintiff asserts (1) he was the only

employee charged with a violation of the rule prohibiting employees from leaving

the jobsite even though his coworkers (i.e. the members of his crew working *under*

him) had left the site, also; and (2) Plaintiff is the only employee who has been

terminated for improperly paying himself despite the practice being common. ECF

No. 45 at 11. As for the first point, the treatment of those working *under* Plaintiff

is not evidence of a similarly situated employee being treated dissimilarly—he was

the foremen who entered the times for the crew and he was charged with more than

just leaving the jobsite early. Further, leaving the jobsite was not Plaintiff's only

noted violation.

As to the second point, Plaintiff asserts that there are other employees who

were not terminated even though BNSF found they engaged in "worse" conduct

than Plaintiff, but Plaintiff failed to demonstrate the employees were similarly

situated or that their conduct was worse than Plaintiff's. *See* ECF Nos. 43 at 5-8;

71 at 5-6; 73 at 19-23; 77 at 2, ¶ 3 (Lewandoski declaration refuting Plaintiff's

claim that a similarly situated employee was treated different than Plaintiff—"[h]e

did not engage in repeated dishonesty, nor had he repeatedly gone home early

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION
FOR SUMMARY JUDGMENT ~ 16

1  without authority[,]" and he was not "a foreman").  Notably, Plaintiff provides

2  some details as to one of the proposed comparators, but this comparator is still not

3  similarly situated because the employee acknowledged his error and the decision to

4  not let him go was not made by Thornton or Clunn.  ECF No. 71 at 6.  Further, this

5  comparator had reported two workplace injuries, cutting against Plaintiff's

6  contention that BNSF retaliates against those reporting injuries.  ECF No. 71 at 6-

7  7.

8           Notably, Clunn testified that he was aware of at least four other employees

9  that BNSF dismissed for similar misconduct and provided evidence demonstrating

10  such.  ECF No. 32-3 at 4, ¶ 10; *see* ECF No. 32-6 at 5 (employee dismissed for

11  falsification of payroll and hours of service over a four-day period), at 11 (foreman

12  dismissed for falsified payroll over a three-day period), at 16 (crew member

13  terminated for falsified time slip records), at 22 (foreman demised for falsely

14  reporting time over a six week period).  Plaintiff asserts that "BNSF has not

15  demonstrated . . . the situations of their terminations are in any way similar to

16  [Plaintiff's] termination[,]" and that this only show "BNSF treated five employees

17  differently than everyone else[.]"  ECF No. 45 at 11.  However, BNSF need not

18  prove such—it is Plaintiff's burden to present dissimilar treatment of like

19  employees; BNSF provided this evidence to negate Plaintiff's claim that his

20  termination was an anomaly only explained by animus.

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION
FOR SUMMARY JUDGMENT ~ 17

Finally, Plaintiff argues (1) BNSF provided shifting explanations for his termination and (2) that a reasonable person could find Plaintiff did not violate workplace rules, but these contentions are all squarely contradicted by the record. ECF No. 45 at 12-14; *see* ECF No. 71 at 8-10.

Accordingly, because Plaintiff has not presented any evidence of retaliation and Defendant has presented clear and convincing evidence they would have terminated Plaintiff irrespective of his protected activities, Defendant is entitled so summary judgment on Plaintiff's FRSA retaliation claim.

B. **The Federal Employer's Liability Act (FELA)**

"Section 1 of FELA provides that '[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part <u>from the negligence</u> of any of the officers, agents, or employees of such carrier.'"  *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994) (emphasis added) (quoting 45 U.S.C. § 51).  FELA is "liberally construed [] to further Congress' remedial goal." *Id.* at 543.  The Supreme Court has determined "that a relaxed standard of causation applies under FELA" where "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."  *Id.* (citing *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506 (1957)).

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT ~ 18

1
2
3

> That FELA is to be liberally construed, however, does not mean that it is a workers' compensation statute. We have insisted that FELA "does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is [the employer's] negligence, not the fact that injuries occur."

4    *Id.* (quoting *Ellis v. Union Pacific R. Co.*, 329 U.S. 649, 953 (1947).

5    Plaintiff argues that BNSF's negligence caused his February 2017 injury.

6    Plaintiff asserts BNSF was negligent for ordering Plaintiff to use a Harley to

7    remove clips without proper training, for telling him to "hurry up" when he fell

8    behind the crew, and for allegedly ordering him to forgo removing rocks before

9    using the Harley to remove clips. *See* ECF Nos. 1 at 3, ¶ 10 ("Molder injured his

10   back because BNSF ordered him to remove the clips with a d-clipper"); 45 at 18.

11   Notably, Plaintiff's argument on the point is very limited and quite conclusory.

12   *See* ECF No. 45 at 18-19.

13   First, there is no evidence Plaintiff being told to hurry or that he should skip

14   removing rocks from the clips led to his harm. Importantly, Plaintiff testified that,

15   after being told to hurry, he (1) did not change the way he was using the Harley (he

16   continued to use the tool in the proper manner with proper body mechanics), (2)

17   continued to inspect his work environment, and (3) took sufficient time to perform

18   his job tasks safely. ECF No. 43-15 at 91, 99-100, 128-29. Instead, Plaintiff

19   asserts that he "increase[d] the speed with which he was removing clips by leaving

20   whatever rocks were between them and the ties." ECF No. 73 at 81. As such, the

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT ~ 19

call to hurry only caused Plaintiff to skip cleaning the rocks out from between the clips and the railroad ties.  However, Plaintiff does not recall whether rocks were present in the final clip that allegedly caused his injury.  ECF No. 43-15 at 86. Plaintiff thus fails to connect the demands (to hurry and skip picking out rocks) with his injury.

Second, Plaintiff has also failed to provide evidence that Plaintiff needed additional training to use a Harley or that ordering Plaintiff to use a Harley to remove clips was negligent.  First, Plaintiff admits that he did not need any additional training on how to use a Harley before his injury, stating that using a Harley is "cut and dry" and "[t]here's no way to over think it[,]" ECF No. 73 at 70. Second, Harleys are specifically designed to remove railroad clips.  ECF No. 43 at 30, ¶ 42.  While the task of removing the clips may be onerous, and liable to give the employees a sore back, there is no evidence others reported being injured by using a Harley.  *See* ECF No. 43-6 at 44.  Indeed, although Plaintiff testified that he thought the Harley was too dangerous to use because "it's too hard on your body[,]" ECF No. 43-15 at 82, Plaintiff (1) could not recall ever hearing that anyone else was injured from the tool, ECF No. 43-15 at 83, and (2) Plaintiff had assigned laborers to work with Harleys on past projects without incident when he was a foreman.  ECF No. 73 at 71, ¶ 50.

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT ~ 20

1        Plaintiff points to his own deposition and the deposition of Tim Gillum,

2   Plaintiff's union representative, to support his contention that Harleys "are widely

3   regarded as a dangerous tool, the use of which is to be limited to when machines

4   are not available and there are not many clips to be removed."  ECF No. 73 at 65-

5   66.  However, while Gillum stated he used a Harley as little as possible because it

6   was "just killer on the body" (particularly the back), that the Harleys are not safe,

7   and that "if you jerked wrong, it could be injury[,]" Gillum testified that he knew

8   of "a lot of sore backs" but couldn't recall anyone being *injured* while using the

9   Harley.  ECF No. 43-6 at 43-45.  Gillum also testified that a crew would usually

10  try to rotate workers so you do not have employees working the Harley multiple

11  days in a row.  ECF No. 43-6 at 45.  However, it was Plaintiff's first day on the job

12  in this position and he does not assert he used a Harley the previous day.

13       Ultimately, Plaintiff flatly admitted that, other than not use the tool, there

14  was nothing he could have done to prevent the injury.  ECF No. 43-15 at 123.

15  However, Plaintiff has not presented any evidence that BNSF was negligent in

16  ordering him to use the tool, especially without evidence that others had been

17  injured when operating this commonly-used tool.  With a history of use without

18  any accidents, Plaintiff cannot say that BNSF acted negligently or otherwise failed

19  "to do that which a person of reasonable prudence would have done under like

20  circumstances."  *Schulz v. Pennsylvania R.R. Co.*, 350 U.S. 523, 525 (1956).

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION
FOR SUMMARY JUDGMENT ~ 21

**ACCORDINGLY, IT IS ORDERED:**

1.  Defendant BNSF Railroad Company's Motion for Summary Judgment (ECF No. 32) is **GRANTED**.

2.  The pending objections and the remaining Motions (ECF Nos. 41; 42; 48; 53; 54; 80) are **DENIED AS MOOT**.

3.  All remaining hearings and trial are **VACATED**.

The District Court Clerk is directed to enter this Order, enter judgment for Defendant, provide copies to counsel, and **close** the file

DATED August 28, 2019.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT ~ 22